ORIGINAL

-1-

Approved: _____
          ANDREW A. ROHRBACH
          Assistant United States Attorney

Before:   THE HONORABLE ONA T. WANG
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - -     19MAG 7108

UNITED STATES OF AMERICA          :    **SEALED COMPLAINT**
                                  :
          - v. -                  :    Violations of 18 U.S.C.
                                  :    §§ 1343, 1344, 1028A, and
OSAMA AHMED ABDELLATIF EL MOKADEM, :    2
   a/k/a "Armin De Goorte,"       :    COUNTY OF OFFENSE:
                                  :    NEW YORK
                  Defendant.      :
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          JEREMY ROSENMAN, being duly sworn, deposes and says
that he is a Special Agent with the United States Attorney's
Office for the Southern District of New York, and charges as
follows:

                        COUNT ONE
                      (Wire Fraud)

          1.    From at least in or about October 2016 up to and
including at least September 2018, in the Southern District of
New York and elsewhere, OSAMA AHMED ABDELLATIF EL MOKADEM, a/k/a
"Armin De Goorte," the defendant, willfully and knowingly,
having devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations, and promises, and
attempting to do so, did transmit and cause to be transmitted by
means of wire communication in interstate commerce, writings,
signs, signals, and sounds for the purposes of executing such
scheme and artifice to defraud, to wit, EL MOKADEM falsely
represented that individuals had donated to a charity controlled

-2-

by EL MOKADEM and caused funds to be transferred to the
charity's account.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
## (Bank Fraud)

2.    From at least in or about January 2019 up to and
including at least March 2019, in the Southern District of New
York and elsewhere, OSAMA AHMED ABDELLATIF EL MOKADEM, a/k/a
"Armin De Goorte," the defendant, willfully and knowingly, did
execute and attempt to execute a scheme and artifice to defraud
a financial institution, the deposits of which were then insured
by the Federal Deposit Insurance Corporation, and to obtain
moneys, funds, credits, assets, securities, and other property
owned by, and under the custody and control of, such financial
institution, by means of false and fraudulent pretenses,
representations, and promises, to wit, EL MOKADEM knowingly did
execute and attempt to execute a scheme whereby he exchanged and
passed checks he knew to be worthless or fraudulent at financial
institutions insured by the Federal Deposit Insurance
Corporation.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE
## (Aggravated Identity Theft)

3.    From at least in or about October 2016 up to and
including at least September 2018, in the Southern District of
New York and elsewhere, OSAMA AHMED ABDELLATIF EL MOKADEM, a/k/a
"Armin De Goorte," the defendant, knowingly did transfer,
possess, and use, without lawful authority, a means of
identification of another person, during an in relation to a
felony violation enumerated in Title 18, United States Code,
Section 1028A(c), to wit, EL MOKADEM used the names and bank
account information of other persons during and in relation to
the wire fraud charged in Count One of the Complaint.

(Title 18, United States Code, Sections 1028A(a)(1).)

-3-
## COUNT FOUR
### (Aggravated Identity Theft)

4.    In or about March 2019, in the Southern District of New York and elsewhere, OSAMA AHMED ABDELLATIF EL MOKADEM, a/k/a "Armin De Goorte," the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during an in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, EL MOKADEM used the name and bank account information of another person during and in relation to the bank fraud charged in Count Two of the Complaint.

(Title 18, United States Code, Sections 1028A(a)(1).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.    I have been a Special Agent with the United States Attorney's Office for three years. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my examination of various reports and records, and on my conversations with witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

#### Overview

6.    Based on my training and experience, and my involvement in this investigation, I have become aware of two fraud schemes that I believe to be perpetrated by OSAMA AHMED ABDELLATIF EL MOKADEM, a/k/a "Armin De Goorte," the defendant. In the first scheme, fraudulent charges were made to individuals' credit cards without their consent to a purported charity created and controlled by EL MOKADEM. In truth and fact, EL MOKADEM used such payments for his own purposes. In the second scheme, checks that EL MOKADEM knew to be fraudulent or worthless were deposited at financial institutions.

## The Charity Scheme

7.    From my review of records from the New York
Department of State, I have learned that on or about July 28,
2015, OSAMA AHMED ABDELLATIF EL MOKADEM, a/k/a "Armin De
Goorte," the defendant, formed a New York charitable entity
called "United Nations Care Inc." ("the Charity"). The Charity's
certificate of incorporation lists, in substance and in part,
both "Osama Elmokadem" and "Armin De Goorte" as initial
directors.  According to the 2016 tax filings for the Charity,
"Osama Elmokadem" served as the entity's Secretary and "Armin de
Goorte" served as its President. The Charity represented that
its mission was to provide health care and education to the
children of refugees and other at-risk children.

8.    Based on my review of the United Nations website,
and the website of the similarly named United Nations entity
"U.N. Cares," I have found no connection between the United
Nations and the Charity. In addition, from my review of the
Charity's bank records, I have identified no expenditures on
international aid programs or programs for children.
Accordingly, I believe that the Charity has no affiliation with
the United Nations,. nor is it engaged in any charitable mission.

9.    Based on my review of records from the New York
Department of State, I know that on or about July 24, 2017, the
Charity changed its name to "Nations Care Inc." It is registered
to an address in New York, New York.

10.   From my review of bank and government records, I
believe that "Armin De Goorte" is an alias of OSAMA AHMED
ABDELLATIF EL MOKADEM, a/k/a "Armin De Goorte," the defendant.
Bank records for De Goorte and EL MOKADEM list the same date of
birth, address, and social security number for both men. The
only government record of De Goorte I have identified is a
driver's license. Having compared that photo to a photo of EL
MOKADEM, I believe they are the same person.  Finally, on at
least one occasion, a bank account in the name of "Armin De
Goorte" paid a credit card statement in the name of EL MOKADEM.

11.   From my review of financial records and
conversations with employees at financial institutions, I have

-5-

learned, among other things, the following:

a. The Charity received donations via credit card payments processed through multiple payment-processing entities.

b. On or about October 3, 2016, the Charity's merchant account with one payment processing entity ("Processor-1") processed a $3,000 charge from an individual ("Victim-1")'s credit card.

c. On or about March 3, 2018, the Charity's merchant account with another payment processing entity ("Processor-2") processed a $50,000 charge from Victim-1's credit card, of which approximately $30,000 reached the Charity's account (the "Charity Account-1") at a bank ("Bank-1") in New York, New York, by on or about March 5, 2018. That same day, a check in the amount of $28,000 was written from Charity Account-1 and deposited in an account in the name of "Armin De Goorte" (the "De Goorte Account-1") at Bank-1 in New York, New York.

d. On or about October 26, 2016, the Charity's merchant account with Processor-1 processed a charge of approximately $10,500 from the credit card of another individual ("Victim-2"). On or about November 14, 2016, $10,499.85 was transferred to the personal account of OSAMA AHMED ABDELLATIF EL MOKADEM, a/k/a "Armin De Goorte," the defendant, (the "EL MOKADEM Account-1") at a bank ("Bank-2") in New York, New York.

e. On or about November 23 and 30, 2016, the corporate credit card for an officer ("Victim-3") of a company located in New York, New York, processed payments totaling approximately $300,000 to the Charity. On or about November 30 and December 2, 2016, the Processor-1 deposited approximately $290,000 in EL MOKADEM Account-1.

f. On or about January 9, 2017, Victim-3's corporate credit card processed a payment of approximately $250,000 to the Charity.

g. On or about October 17, 2017, the Charity's account with Processor-2 processed a charge of approximately $20,000 from another individual ("Victim-4"). A total of approximately $20,000 was deposited in the Charity's account

-6-

(the "Charity Account-2") at Bank-2 in New York, New York, on or about October 19, 2017. At the time of the deposit, the account balance was approximately $1,690. After the payment was deposited, the Charity wrote two checks totaling approximately $6,500 to EL MOKADEM Account-1.

h.    On or about April 7, 2018, the Charity's account with Processor-2 processed two payments in the aggregate amount of $50,000 from another individual ("Victim-5"). A total of $49,965.41 was deposited in Charity Account-1 on or about April 9, 2018, and that same day, $45,000 were transferred to De Goorte Account-1. Two days later, approximately $11,000 from De Goorte Account-1 was used to pay a credit card statement with Bank-2 in the name of EL MOKADEM.

i.    On or about August 29, 2018, another individual ("Victim-6") received a credit card charge in the amount of $10,000 from the Charity. On or about September 4, 2018, another payment processing entity ("Processor-3") deposited $10,000 in De Goorte Account-1. The same day, withdrawal slips show that "Armin de Goorte" withdrew $2,000 from the account.

j.    On or about September 4, 2018, another individual ("Victim-7") received a credit card charge in the amount of $20,000 from the Charity. On or about September 6, 2018, Processor-3 deposited $20,000 in De Goorte Account-1. The same day, withdrawal slips show that "Armin de Goorte" withdrew $2,000 from the account.

k.    Processor-1 and Processor-2 process their transactions at servers located outside of the State of New York.

12.    From in or about April 2019 to in or about July 2019, I participated in interviews with Victim-1, Victim-2, Victim-3, Victim-4, Victim-5, Victim-6, and Victim-7 ("the Victims"). Based on those interviews and my review of bank records, I know that each of the Victims reported their transactions identified in paragraph 11 as fraudulent, and each victim's account was credited for the transaction.

13.    From my review of Processor-1's records, I have learned that Processor-1 conducted reviews of the Charity's transactions with Victim-1 and Victim-3. In the course of those

reviews, the Charity provided:

a. A putative "invoice" dated October 7, 2016, addressed to Victim-1 and charging him $3,000 for three guests "requesting the middle table" at the 2016 UN Day Humanitarian Awards Dinner in New York, New York.

b. A putative "invoice" dated January 10, 2017, to Victim-3 in the amount $300,000 with the description, in sum or substance, "We pledge to help the United Nations care auspices, to build orphanages children." The Charity also provided a letter dated January 10, 2017, putatively thanking Victim-3 and his wife for their contribution of $300,000.

14. Based on my interviews of the Victims, I have learned, in substance and in part, that none of the Victims were solicited by or contributed to the Charity. Additionally, none of the Victims knew an "Armin De Goorte." I have also learned that Victim-1 never purchased seats at a table for a United Nations-related charity event.

## The Bank Fraud Scheme

15. Based on my review of bank records and other documents, I have learned, among other things, the following:

a. On or about January 17, 2019, a check was written from De Goorte Account-1 to the Charity in the amount of $3,000,000. At the time the check was written, De Goorte Account-1 had a balance of less than $500.

b. Also on or about January 17, 2019, the $3,000,000 check was deposited in an account for the Charity at another bank ("Bank-3") in New York, New York. At the time the check posted to that account, the account had a negative balance of approximately $15,000. Between on or about January 17, 2019, and on or about January 22, 2019, more than $800,000 in funds were attempted to be withdrawn or transferred from the account, including checks to "Armin de Goorte" and transfers to establish new bank accounts in the name of "Armin de Goorte." The check was returned on or about January 22, 2019, due to insufficient funds.

16. Based on my review of bank records and other documents, and my conversation with a representative of a

-8-

company based in New York, New York ("Company-1"), I have
learned, among other things, the following:

a.    On or about March 22, 2019, a check listing
Company-1 as the payor in the amount of $6,000,000 was deposited
in another account for the Charity at Bank-1 in New York, New
York. Before the check posted to this account, the account had a
balance of approximately $800.  The memo line of the check
indicates, in sum and substance, that the check is a
contribution.

b.    On or about March 25, 2019, Company-1
discovered that its bank account at a bank ("Bank-4") was
overdrawn by over $5,000,000. After conversations between
Company-1 and Bank-4, they identified a check dated on or about
March 4, 2019, in the amount of $6,000,000, written from
Company-1 to the Charity. The check is written under the
Company-1's corporate name and is numbered 3281.

c.    According to a representative of Company-1,
Company-1 never made a contribution to the Charity and did not
authorize the $6,000,000 check.  The check was returned on or
about March 27, 2019.

17.    Based on my training, experience, and review of
open source material, I have learned, in substance and in part,
that Bank-1, Bank-3, and Bank-4 were insured by the Federal
Deposit Insurance Corporation during the time period during
which OSAMA AHMED ABDELLATIF EL MOKADEM, a/k/a "Armin De
Goorte," the defendant, executed the transactions as described
above.

WHEREFORE, deponent respectfully requests that warrants be
issued for the arrest of OSAMA AHMED ABDELLATIF EL MOKADEM,
a/k/a "Armin De Goorte," the defendant, and that he be arrested
and imprisoned, or bailed, as the case may be.

Jeremy Rosenman
Special Agent
United States Attorney's Office
Southern District of New York

-9-

Sworn to before me this
31st day of July, 2019



THE HONORABLE ___ WONG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK